UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Holding a Criminal Term

Grand Jury Sworn in January 28, 2021

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. |
| | : | |
| v. | : | GRAND JURY ORIGINAL |
| | : | 21-MJ-256 |
| OLATUNJI DAWODU, | : | VIOLATION: |
| and ALEX OGANDO, | : | 21 U.S.C. § 846 |
| | : | (Conspiracy to Distribute 400 grams or More |
| Defendants. | : | of a Mixture and Substance Containing a |
| | : | Detectable Amount of Fentanyl) |
| | : | |
| | : | FORFEITURE: |
| | : | 21 U.S.C. § 853(a) and (p) |

## INDICTMENT

The Grand Jury charges that:

At times material to this Indictment:

### DEFINITION OF TERMS

1. Bitcoin ("BTC") was one type of virtual currency, also known as cryptocurrency, that was circulated over the Internet. Generally, BTC was sent and received using a BTC "address," which was like a bank account number and was represented by a case-sensitive string of numbers and letters. Little to no personally identifiable information about the sender or recipient was transmitted in a BTC transaction itself.

2. Darknet markets were commercial websites located within the Tor network's hidden services that could only be accessed using Tor. Darknet markets functioned primarily as black markets, selling or brokering transactions involving drugs, weapons, stolen credit card details, and other illicit goods. BTC was the most common method of payment for products or services within darknet markets.

3. Wall Street, Empire, Deep Sea, Icarus, and ToRReZ Markets, were, at various times, popular darknet markets widely used by individuals in the United States and elsewhere to buy and sell illegal narcotics.

## COUNT ONE
### (Drug Distribution Conspiracy)
21 U.S.C. § 846

4. Paragraphs 1 through 4 are incorporated herein.

5. Beginning on or about March of 2019, and continuing through on or about February of 2021, within the District of Columbia and elsewhere, the defendants, **OLATUNJI DAWODU** and **ALEX OGANDO**, did knowingly conspire, with others known and unknown to the Grand Jury, to knowingly and intentionally distribute 400 grams or more of a mixture and substance containing a detectable amount of fentanyl, a Schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(vi).

### OBJECTS OF THE CONSPIRACY

6. The objects of the conspiracy were, in substance, as follows:

    a. to traffic narcotics;

    b. to use cryptocurrency and the darknet to conceal the co-conspirators' illicit activities; and

    c. to enrich the co-conspirators from the trafficking of narcotics.

### MANNER AND MEANS

7. **ALEX OGANDO** sold narcotics, including fentanyl, on numerous darknet markets, including Wall Street, Empire, Icarus, Deep Sea, and ToRReZ in exchange for BTC.

8. **ALEX OGANDO** utilized a specific online moniker (hereinafter "Moniker X") on darknet markets where he offered pills pressed with fentanyl for sale.

9. For example, between in or about March of 2019 until April of 2019, the vendor advertised the sale of pills on Wall Street and Empire using Moniker X. On Empire, the pills were described as "as OXYCODONE M30 PRESSED JUST RIGHT WITH FENT," a reference to the pills containing fentanyl.

10. The darknet sales by the vendor were conducted as follows:

   a. The vendor sites would be set up on different darknet markets;

   b. Customers would place orders for pills through the darknet market and could communicate with the vendor using encrypted messaging;

   c. **OLATUNJI DAWODU** and **ALEX OGANDO** would obtain packaging and shipping materials;

   d. **OLATUNJI DAWODU** would coordinate with Individual #1 to ensure that packages for orders that had been placed over the darknet market were dropped in blue boxes or post offices operated by the U.S. Postal Service ("USPS");

   e. Packages were typically sent using USPS Priority Mail, with postage that had been paid for in cryptocurrency;

   f. The packages were sent from the New England region, to buyers across the country, including purchasers in the District of Columbia; and

   g. Once the shipments were received by the customer, the darknet market would release funds in BTC or other cryptocurrencies, which were held in escrow until the transaction was completed, into the vendor account on the darknet market.

OVERT ACTS

11.     The defendants and co-conspirators, known and unknown to the Grand Jury, committed, and caused to be committed, the following overt acts, amongst others, in furtherance of the conspiracy.

*Darknet Activity*

12.     In setting up the vendor site on Wall Street, **ALEX OGANDO** conducted Bitcoin transactions that resulted in the payment of the vendor bond.

*Undercover Purchases from Darknet Markets*

13.     During the course of this investigation, a number of undercover purchases of pills were made, to include:

| Market | Date | Pills Order | Substance Identified |
|---|---|---|---|
| Empire | 6/4/2019 | 10 | Fentanyl |
| Empire | 1/21/2020 | 30 | Fentanyl |
| Empire | 3/2/2020 | 30 | Fentanyl |
| Empire | 5/11/2020 | 50 | Fentanyl |
| Empire | 8/14/2020 | 30 | Fentanyl |

14.     During the January 21, 2020, transaction the pills ordered from Moniker X were shipped to the District of Columbia.

15.     Each of the packages from the vendor was shipped via USPS Priority Mail envelopes and packaged in a similar fashion, with labels affixed that displayed return addresses with fictitious names and addresses.

*Drops of Drug Packages*

16.     On or about March 27, 2020, **OLATUNJI DAWODU** and Individual #1 communicated regarding potential locations to drop narcotics packages in the Rhode Island and

4

Massachusetts area.

17. On or about March 31, 2020, Individual #1 sent a message to **OLATUNJI DAWODU** inquiring "Anything else going out today/ tomorrow," and then sent a series of images of post office or blue box locations in the Massachusetts area.

18. On or about April 21, 2020, **OLATUNJI DAWODU** sent a message to Individual #1 advising him/her to "Get ready for abt 11 am . 4 stops".

19. On or about May 11, 2020, an FBI undercover agent purchased fifty (50) oxycodone pills from the vendor on the Empire Market. On May 20, 2020, the FBI received fifty (50) blue pills as advertised on the vendor's page on the Empire Market. The package was sent via a USPS Priority Mail envelope from the Boston, Massachusetts, area. Affixed to the package was a printed label with a return address, which included a fictitious name and address. Inside of the USPS Priority Mail envelope was a white padded manila envelope. Within the white padded manila envelope was a white envelope. Within the white envelope, there were fifty (50) light blue pills in clear vacuum-sealed plastic. The USPS Priority Mail envelope was sent to the FBI laboratory for fingerprint analysis. The laboratory report results revealed a positive fingerprint match for Individual #1 on the outer portion of the USPS Priority Mail envelope.

*Recovery of Pills and Shipping Supplies*

20. On or about February 23, 2021, a search warrant was executed at **OLATUNJI DAWODU**'s residence in Fort Lauderdale, Florida. Law enforcement recovered more than 1,200 grams of suspected fentanyl pills, consistent with the pills that had been shipped by the vendor during the undercover purchases described above. There were also USPS envelopes, vacuum sealing bags, latex gloves, and additional packaging materials located in the residence, consistent

with those that had been used to package the narcotics purchased over the darknet in this investigation.

21. On or about February 23, 2021, a search warrant was executed at **ALEX OGANDO**'s residence in Providence, Rhode Island. A search of his residence resulted in a seizure of more than $350,000 in U.S. currency, and a money counter. Additionally, in the apartment above **ALEX OGANDO**'s residence, law enforcement recovered more than 1,700 grams of suspected fentanyl pills, consistent with the pills that had been shipped by the vendor during the undercover purchases described above. Law enforcement also recovered approximately 30 USPS envelopes that had been packaged with pills (the weight of those pills was approximately an additional 300 grams), as well as additional USPS envelopes, vacuum sealing bags, latex gloves, and additional packaging materials, consistent with the materials that had been used to package the narcotics purchased over the darknet in this investigation.

**(Conspiracy to Distribute 400 grams or More of a Mixture and Substance Containing a Detectable Amount of Fentanyl**, in violation of Title 21, United States Code, Section 846)

## FORFEITURE ALLEGATION

Upon conviction of the offense alleged in Count One of this Indictment, the defendants shall forfeit to the United States pursuant to 21 U.S.C. § 853, any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of the said violations and any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of the said violations. The United States will also seek a forfeiture money judgment against the defendants equal to the value of any property constituting, or derived from, any proceeds obtained, directly or indirectly, as the result of the offense.

If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

the defendants shall forfeit to the United States any other property of the defendant, up to the value of the property described above, pursuant to 21 U.S.C. § 853(p).

(**Criminal Forfeiture**, pursuant to Title 21, United States Code, Section 853(a) and (p))

A TRUE BILL:

FOREPERSON.

*/s/ Michael R. Sherwin*
Attorney of the United States in
and for the District of Columbia.

7